**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

AMANDA PORTER,

    Plaintiff,

    v.                                         C.A. No. 13-160

AMERICAN HERITAGE LIFE
INSURANCE COMPANY,

    Defendant.

## DECISION AND ORDER

RONALD R. LAGUEUX, Senior U.S. District Judge.

This matter is before the Court on Plaintiff's Motion to Remand her lawsuit to the Rhode Island Superior Court sitting in Providence from whence it was removed by Defendant. Plaintiff Amanda Porter is a Rhode Island resident, while Defendant American Heritage Life Insurance Company is headquartered in Jacksonville, Florida. Defendant removed the case to the federal court, citing the complete diversity of citizenship between the parties as required for removal jurisdiction under 28 U.S.C. § 1441. However, Plaintiff argues that the case must be remanded because the benefits she seeks under the insurance policies issued by Defendant are insufficient to satisfy the $75,000 amount-in-controversy requirement of 28 U.S.C. § 1332(a). For reasons explained below, this Court orders that this matter be remanded to Providence Superior Court.

## Background

Defendant issued three insurance policies to Plaintiff covering accident and disability, effective March 1, 2010.  In October 2010, Defendant notified Plaintiff that she was in arrears in her premium payments on each policy, and requested payment to bring the policies current.  Plaintiff made the necessary payments in December, and the policies were reinstated.  On April 1, 2011, Defendant notified Plaintiff that her policies had lapsed as of February 1, 2011, because of her failure to keep up with the premium payments.

Plaintiff injured her back at her home on February 20, 2011.  She submitted a claim for benefits to Defendant on May 9, 2011, along with supporting documentation from her doctor and employer.  Her doctor stated that she was suffering from "cervical and lumbar disc syndrome" and was unable to work.  On May 17, Defendant paid Plaintiff benefits of $4,080 for the period of February 22 to April 30, 2011.  Defendant denied Plaintiff's subsequent claims, citing the policies' lapse as of February 1, 2011.  Plaintiff asserts that she is eligible for benefits because her injury took place during the policies' grace period.

### *The Complaint*

Plaintiff's Superior Court complaint sounds in two counts.  Count I alleges that Defendant breached the contractual language of all three insurance policies when it denied her benefits even

though she was unable to work.  She seeks compensatory damages, punitive damages, interest and costs.  In Count II, Plaintiff alleges that Defendant denied her claim for benefits in bad faith, in violation of Rhode Island Gen. Law § 9-1-33.  Again, Plaintiff requests compensatory damages, punitive damages, interest, costs and attorneys' fees.

## Analysis

Defendant timely removed the case to this Court in March 2013, pursuant to 28 U.S.C. § 1446.  The parties agree that diversity of citizenship exists.  However, their dispute concerns the amount of money at stake in the lawsuit.  The federal statute states that: "The district courts shall have original jurisdiction where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."  28 U.S.C. § 1332(a)(1).

Defendant argues that, since the validity of the policies is at issue, the amount in controversy must be the total face value of all three policies, an amount close to $135,000.  Plaintiff responds that she is only seeking the benefits due her under the policies, an amount limited to $54,720, well below the jurisdictional requirement.

### *Burden on party invoking federal jurisdiction*

When a plaintiff objects to the removal of the suit to federal court, the burden is on the defendant to establish that

federal jurisdiction is proper.  Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2009).  In the context of a dispute over the amount-in-controversy requirement, courts across the country define that burden differently.  In Amoche, the First Circuit used a "reasonable probability" standard in a class action suit removed by defendants who claimed federal jurisdiction under the Class Action Fairness Act:

> The removing defendants must show that it appears to a reasonable probability that the aggregate claims of the plaintiff class are in excess of $5 million.

556 F.3d at 49 (citing Blockbuster, In. v. Galeno, 472 F.3d 53, 58 (2nd Cir. 2006).  The Amoche Court explained that "reasonable probability" is essentially the same as a "preponderance of the evidence" standard, but is a superior semantic formulation for an analysis that must be undertaken by the court at the pleading stage of the litigation.  Id. at 50.

In Youtsey v. Avibank Manufacturing, Inc., 734 F. Supp.2d 230, 233 (D.Mass. 2010), the Massachusetts District Court concluded that the First Circuit's reasoning in Amoche could be extended beyond class action cases, noting that, "...neither the First Circuit nor, for that matter, the Supreme Court has ever addressed the precise issue here, *i.e.*, the proper burden a removing defendant bears in demonstrating the amount in controversy in a diversity case."  In reliance on Youtsey, the

reasonable probability standard has subsequently been applied in several district court cases in this Circuit, and will be employed by this Court herein. See Providence Piers, LLC v. SMM New England, Inc., 2013 WL 178183 (D.R.I.); Toro v. CSX Intermodal Terminals, Inc., 2013 WL 593947 (D.Mass.); Gomes v. Midland Funding, LLC, 839 F. Supp.2d 417, 419-20 (D.Mass. 2012); Reynolds v. World Courier Ground, Inc., 272 F.R.D. 284, 286 (D.Mass. 2011); Mutual Real Estate Holdings, LLC v. Houston Cas. Co., 2010 WL 3608043 (D.N.H.).

### *Other factors bearing on the remand analysis*

In addition to fixing the burden on Defendant to demonstrate a reasonable probability that Plaintiff's claims exceed the $75,000 threshold, the Court must also place its thumb on the scale in accordance with well-established legal principles governing removal jurisdiction. First, the Constitution demonstrates the intent to limit the jurisdiction of federal courts. U.S. Const. art. III, § 2, cl. 1. And, by increasing the financial stakes required to get into federal court, Congress has made the courts responsible to "police the border of federal jurisdiction." Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001). Consequently, as well as for reasons of federalism and comity, removal statutes are to be construed strictly and, in ambiguous cases, construed against removal. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 109 (1941); Rossello-Gonzalez v.

Calderon-Serra, 398 F.3d 1, 11 (1st Cir. 2004). The final principle that must be brought to bear by this Court is the axiom that "the plaintiff is the master of the claim," meaning that some liberality must be employed in permitting plaintiff to pursue her claims in the court of her choice. Rossello-Gonzalez, 398 F.3d at 11. These three principles make the burden heavier on Defendant herein.

### *The validity of the policies*

Defendant's sole argument in support of its contention that Plaintiff's claims satisfy the $75,000 federal jurisdictional limit is that the validity of the insurance policies in their entirety is in dispute, which means that the amount in controversy must be the total of the full amount available for every compensable occurrence under all three policies. In support of its argument, Defendant cites four cases in which the enforceability of the policy or policy provisions were at issue.

In Hawkins v. Aid Ass'n for Lutherans, 338 F.3d 801 (7th Cir. 2003), plaintiffs sought to nullify a mandatory arbitration clause that had been added to their policies after they were issued. The court concluded that the federal jurisdictional requirement was satisfied because, "...when the validity of a policy (as opposed to the insurer's obligation to pay) is in dispute, the face value of that policy is a proper measure of the amount-in-controversy." Id. at 805.

In Pepper v. State Farm Mutual Automobile Ins. Co., 2012 WL 6554036 (S.D.W.Va.), plaintiff sought the reformation of his car insurance policy to include uninsured motorist coverage, as required by law in West Virginia. Despite the plaintiff's modest monetary claim, the court concluded that the amount in controversy was $100,000, the full amount of uninsured motorist coverage that would have been included in plaintiff's policy had it been in compliance with state law.

In Bell v. Philadelphia Life Ins. Co., 78 F.2d 322 (4th Cir. 1935), plaintiff's policy had been converted, according to its terms, to an extended term life insurance policy when he failed to make his premium payments. Nonetheless, he sought disability benefits in state court, as well as a declaration that the original terms of the policy were in full force and effect. After the case was removed to federal court, it was tried to a jury, and the judge directed a verdict for defendant. On appeal, Bell argued that the case should be remanded to federal district court for remand to state court because the amount-in-controversy jurisdictional requirement was not met. The Fourth Circuit denied the motion to remand, stating that, because Bell sought a declaratory judgment that the policy was still in force, the full value of the policy was at stake. Id. at 323.

Finally, Defendant relies upon a case from this Court, Wilbert v. UNUM Life Ins. Co., 981 F.Supp. 61 (D.R.I. 1997). In

Wilbert, plaintiffs wanted cancelled policies reinstated, but they did not seek benefits or money damages. Id. at 64. This writer concluded that the proper measure of the amount in controversy was the face value of the policy, stating:

> In actions for declaratory relief where no money damages are sought, as in this case, the amount in controversy is measured by the value of the object of the litigation, which is the 'value of the right to be protected or the extent of the injury to be prevented.'

Id. at 64 (quoting Leininger v. Leininger, 705 F.2d 727, 729 (5th Cir. 1983)).

While these cases do not chart a clear path, some common sense principles come through: When the validity of an insurance policy is in dispute, a finding that it is valid may, or may not, bring back to life all the coverage possible under the policy. If the object of the litigation is to re-establish the operation of the policy for all purposes, the full face value of the policy is at stake for the insurance company, and is, therefore, the amount in controversy. However, if something less than the full reinstatement of the policy is the plaintiff's goal, then the insurance company likely has less at stake.

In Anver v. Unum Provident Corp., 2001 WL 1013166 (D.Kan.), the court explained the distinction as follows:

> In actions for declaratory relief, the amount in controversy is measured by the value of the object of the litigation, which is the

-8-

> 'value of the right to be protected or the extent of the injury to prevented.' In a suit by the insured to recover disability benefits the amount involved for purposes of jurisdiction is the amount of the disability benefits for which suit is brought, even though the effect of the judgment may be to establish the right of the insured to recover sums far in excess of the jurisdictional amount.

2001 WL 1013166 at 3 (internal citations omitted). See also Cheung v. Union Central Life Ins. Co., 269 F.Supp. 2d 321, 324 (S.D.N.Y. 2003)("Insurance is purchased to protect against adverse risks, so the amount the carrier ultimately may be called upon to pay is a defensible measure of the value of the policy.")

In the present case, Plaintiff does not seek a declaratory judgment that her policies are in full force and effect, as did the plaintiffs in Hawkins, Bell and Wilbert. Nor does she seek reformation of her policies, as was the object in Hawkins and Pepper. Plaintiff herein seeks only the benefits due her, which will require an interpretation of the grace-period provisions of her policies.

Moreover, Plaintiff's potential recovery is limited by the terms of the policies, as well as by her own particular circumstances. She sustained her injury on February 20, 2011, an occurrence which may, or may not, fall into the policies' 31-day grace period. If it is eventually determined that the grace period was in effect when Plaintiff was injured, the benefits for

-9-

which she may be eligible (if, *inter alia*, her disability is demonstrated) are capped by the terms of the policies. The policies will not spring to life providing her with benefits for an unlimited future. One policy would provide her with six months of benefits at $1,600 a month; one would provide her with 24 months of benefits at $1,600 a month; and the accident policy would provide her with $1,800 for six months. Subtracting the amount of benefits that she has already received, the total exposure for Defendant is $54,720. While it is true that Plaintiff's Complaint seeks compensatory and punitive damages, those amounts are not quantifiable at this point in the litigation.

The cases cited by Defendant are somewhat arcane, and the distinctions between those cases and the case at the bar are subtle. However, the Court's necessary bias in favor of remand tips the scale. The burden is on Defendant to demonstrate to a reasonable probability that the amount in controversy would exceed $75,000. In the face of Plaintiff's sensible argument about the limits of her recovery, Defendant has not sustained that burden.

## Conclusion

For the foregoing reasons, this Court grants Plaintiff's motion to remand this matter to the Rhode Island Superior Court

sitting in Providence, for the counties of Providence and

Bristol.

It is so ordered.

/s/Ronald R. Lagueux
Ronald R. Lagueux
Senior United States District Judge
July  30  , 2013